```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Barbara J. Dudley,              :

     Plaintiff,            :

  v.                            :     Case No. 2:16-cv-0682

Commissioner of Social Security,:     JUDGE JAMES L. GRAHAM
                                                  Magistrate Judge Kemp
     Defendant.            :

<u>REPORT AND RECOMMENDATION</u>

I.  <u>Introduction</u>

Plaintiff, Barbara J. Dudley, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on November 17, 2014, and alleged that Plaintiff became disabled on September 1, 2014.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on January 21, 2016. In a decision dated February 3, 2016, the ALJ denied benefits. That became the Commissioner's final decision on May 17, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on September 19, 2016. Plaintiff filed a statement of errors on January 13, 2017, to which the Commissioner responded on April 28, 2017. Plaintiff did not file a reply brief, and the case is now ready to decide.

II.  <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff, who was 56 years old as of the date of the hearing and who has a high school education as well as nurse's aide training, testified as follows. Her testimony appears at pages 56-68 of the administrative record.

Plaintiff first testified that she filed her disability application due to pain in her lower back. She did take care of her grandchildren for several months in 2014. She also said that her husband was disabled and had had several back surgeries, the most recent being in 2015.

The last time Plaintiff worked was for Dollar General, a job she held for more than seven years. She was fired because of a shortage in her cash drawer, something she denied. She had been a cashier and stock clerk. After being fired, she did look for work, but discontinued doing so because of her back pain. Before taking the job at Dollar General, she worked part-time as a kitchen helper and housekeeper.

When asked why she could no longer work, Plaintiff said that she could not handle stress or being around people. She had started mental health counseling about a month prior to the hearing. Plaintiff said that she was able to do some cooking and housework, although that was interrupted by pain. She could sit for prolonged periods. She had been taking Celexa and it had helped with her depression for some time, but not more recently. She only left home to see the doctor or go grocery shopping, and in the grocery store she waited until an aisle was empty before she would enter it. She had no hobbies and no social activities.

### III. The Medical Records

The pertinent medical records are found beginning at page 230 of the administrative record. The records relating to a potential mental impairment, which is the issue raised by Plaintiff's statement of errors, can be summarized as follows.

Plaintiff saw her general practitioner on April 16, 2014 for a follow-up appointment. She had just become insured again and wanted to restart Celexa, which in the past had helped her with depression and anxiety. Her Celexa prescription was refilled although no psychological symptoms were noted in the record of

that visit. (Tr. 242-44). That appears to be the only treatment record relating to depression or anxiety.

Dr. Swearingen conducted a consultative psychological evaluation on February 18, 2015. Plaintiff reported being unable to be around people and seldom leaving her room. She also said that she had difficulties dealing with people in authority. She had never had psychological counseling. While working, she said she had some difficulty getting along with co-workers and also some reading difficulties. She could no longer deal with work pressure. She was still the guardian for two grandchildren and she could cook simple meals for them. Dr. Swearingen observed that Plaintiff's affect was flat and blunted and that she reported feelings of depression and worthlessness. She was shaking at various times during the interview. She took a long time to complete simple arithmetic calculations and she appeared to function in the low average to borderline range. Dr. Swearingen diagnosed major depressive disorder and PTSD. He thought that Plaintiff's psychological impairments would moderately affect her in the workplace, that she would need additional practice opportunities and directions if she were asked to master new tasks, that she might have problems with sustained attention and concentration due to defensiveness when presented with tasks she could not understand or perform, that she had a history of disrupted interpersonal relationships, and that her emotional instability, depression, and anxiety would likely diminish her coping skills. She would perform better in a low-stress environment. (Tr. 262-66).

A state agency psychologist also expressed opinions about Plaintiff's mental functional capacity. Dr. Tishler said her impairments were severe and that she needed to work in an environment that did not require mathematical calculations and which was slow-paced and not requiring making judgments or

decisions for others. He also concluded that she was moderately limited in her ability to deal with others and should not deal with the general public on a frequent basis. Lastly, she would need supervision when attempting to adapt to changes in the workplace. (Tr. 91-93). A second state agency psychologist, Dr. Jenkins, concluded, as part of the reconsideration process, that although Plaintiff had a severe affective disorder and a severe anxiety disorder, there was insufficient evidence to evaluate the functional limitations arising from those disorders.

### IV. The Vocational Evidence

Lynne M. Kauffman testified as the vocational expert in this case. Her testimony begins at page 69 of the administrative record.

Ms. Kauffman began by identifying and classifying Plaintiff's past jobs. She said that the stock clerk job was heavy and semiskilled. Plaintiff had also worked as a packager, which is a medium unskilled job. She had no other full-time work.

Next, Ms. Kauffman was asked questions about a hypothetical person who could work at the medium exertional level, who could climb, kneel and crawl frequently and occasionally stoop and crouch. She said that such a person could do the job of packager, as well as other medium unskilled jobs like cleaner, kitchen helper, and dietary aide.

Responding to questions from Plaintiff's counsel, Ms. Kauffman next testified that someone who could neither squat nor kneel could still do the packager job. Further, if the person needed to be redirected by a supervisor every thirty minutes, he or she could not maintain unskilled employment. The same would be true if the person could not do simple repetitive tasks.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 36-

48 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Second, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including osteoarthritis of the right knee and mild diffuse degenerative disc disease of the lumbar spine.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the medium exertional level, could climb frequently, could occasionally stoop or crouch, and could kneel or crawl frequently.

With these restrictions, the ALJ concluded that Plaintiff, could do her past relevant work as a packager.  A person who can do his or her past relevant work is not disabled under the Social Security Act.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Errors

In her statement of errors, Plaintiff raises a single issue - that the ALJ erred by not finding that Plaintiff had a severe mental impairment.  The ALJ's decision is reviewed under this legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The ALJ explained his decision not to find a severe mental impairment in the following way. He recognized that Dr. Swearingen had done a consultative examination and summarized Dr. Swearingen's findings as well as the symptoms which Plaintiff reported to him. (Tr. 39-40). After restating Dr. Swearingen's conclusions, the ALJ gave little weight to them because they appeared to be based on Plaintiff's own subjective complaints and because Plaintiff "rarely complained of any mental health symptoms during medical checkups" and had only recently begun to see a mental health counselor. (Tr. 40). He then gave great weight to the opinion of the second state agency psychologist to the effect that the record did not contain sufficient evidence to make a residual functional capacity finding, giving little weight

to Dr. Tishler's conclusions as lacking objective support in the record and as being inconsistent with Plaintiff's activities of daily living, including being able to shop and to care for her husband and grandchildren. Id. He concluded with this statement: Plaintiff's "medically determinable mental impairments of depression and borderline intellectual functioning do not cause more than minimal limitation of her ability to perform basic mental work activities and are therefore nonsevere." Id. The ALJ then went through the "B" criteria, finding only mild limitations in the first three areas and no episodes of decompensation, which, again, led to the conclusion that her mental impairments were nonsevere. He did not further discuss any mental impairments in making his residual functional capacity finding.

Plaintiff identifies several areas where, in her view, the ALJ committed reversible error. First, she takes issue with the ALJ's reliance on the opinion of the second state agency psychologist, noting that the opinion of that psychologist supports the existence of severe impairments, and that the primary reason that the psychologist did not express an opinion as to residual functional capacity was the inability to contact either Plaintiff or her representative. Second, she contends that the rejection of Dr. Swearingen's opinion was not based on substantial evidence because, in addition to listening to Plaintiff's complaints, Dr. Swearingen observed specific manifestations of severe mental impairments including shaking, inconsistent eye contact, minimal facial expressiveness, monotone voice, psychomotor retardation, and an excessively long time to perform simple arithmetical calculations. Third, she contends that the ALJ's outright rejection of Dr. Tishler's conclusions was improper because that opinion was supported by Dr. Swearingen's report and was not inconsistent with Plaintiff's

reported daily activities.

In the memorandum in opposition, the Commissioner responds in detail to each of these arguments. As to Dr. Jenkins' opinion, the Commissioner agrees that to the extent that the ALJ read this opinion to mean that Plaintiff had no severe mental impairments, that was likely an error, but that error was harmless because the ALJ found other severe impairments and proceeded to the next steps of the sequential evaluation process. As to the ALJ's rejection of both Dr. Tishler's and Dr. Swearingen's opinions, the Commissioner argues that the ALJ properly concluded that both opinions conflicted with the record evidence and that they were based primarily on Plaintiff's reports of symptoms rather than on any objective evidence. The Court does not find these arguments persuasive.

It is a rare case where an ALJ is justified in disregarding the opinion of every mental health professional who has either examined a claimant, or reviewed the records, and found the claimant to be suffering from one or more severe impairments. This is simply not one of those cases. The ALJ did err by misinterpreting Dr. Jenkins' opinion, failing to recognize that Dr. Jenkins found the existence of two separate severe mental impairments. It is unclear why Dr. Jenkins' inability to contact Plaintiff's representative precluded her from evaluating the limitations arising from these impairments; she simply stated that she "[n]eeded perm contact of info from rep. rep never responded to calls or letters and there is insufficient evidence to make a medical determination." (Tr. 119). Nevertheless, the state agency, even on reconsideration, found Plaintiff's report of psychologically-based symptoms "partially credible." (Tr. 120). The only reasonable conclusion to be drawn from the record is that all of the mental health professionals found severe mental impairments. And although it is true that the ALJ found

severe physical impairments and proceeded to the fourth step of the sequential evaluation process, because he did not take any mental impairments or limitations into account at that stage of the case, the harmless error analysis set forth in cases like <u>Maziarz v. Sec'y of HHS</u>, 837 F.2d 240, 244 (6th Cir. 1987), does not apply. <u>See, e.g., Simpson v. Comm'r of Social Security</u>, 344 Fed.Appx. 181, 190-91 (6th Cir. Aug. 27, 2009)(finding that the ALJ erred by not considering a non-severe mental impairment when making the residual functional capacity finding – the same situation involved in this case); <u>see also Rose v. Comm'r of Social Security</u>, 2015 WL 6735313, *5 (S.D. Ohio Nov. 4, 2015)("[a]s this Court has repeatedly held, the harmless error analysis advanced by the Commissioner is appropriate only when the ALJ properly considered any functional limitations arising from non-severe impairments when crafting his residual functional capacity finding"), <u>adopted and affirmed</u> 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015).

    The error is compounded by the ALJ's discussion and discounting of the opinions of both Dr. Swearingen and Dr. Tishler. The reasons given are perhaps sufficient to discount some of the functional limitations which each psychologist imposed, but not to justify rejecting the basic conclusion each reached as to the presence of a severe impairment. All psychological interviews depend to some extent on the claimant's self-reported symptoms, but to disregard all of the objective indications of a severe mental impairment just because subjective complaints are a part of psychological evaluations is too much of a stretch. Certainly, Plaintiff engaged in some daily activities which indicated that she might not be as limited as either Dr. Tishler or Dr. Swearingen said - although her grocery shopping, as she described it, was consistent with significant psychological limitations - but that does not mean there were no limitations at all. In that regard, this case is very much like

-9-

Combs v. Colvin, 2015 WL 1606160 (E.D. Ky. April 8, 2015), where the court also determined that an ALJ's failure to ascribe any work-related limitations to diagnosed psychological conditions was error, and rejected a similar effort to discount completely the opinion of an examining psychologist because that source took the claimant's subjective complaints into account.

It may well be that, even with some psychological limitations - either those expressed by Dr. Tishler or Dr. Swearingen - or with some lesser number of restrictions, Plaintiff can still perform substantial gainful activity. That, however, is not the question. The question is whether the ALJ erred by not assigning any restrictions at all to conditions which, based on the record, are severe. Because the ALJ committed that error, the case must be remanded for further evaluation of Plaintiff's diagnosed mental impairments.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
